## Case No. 6,760.

### HOWARD v. LA CROSSE & M. R. CO.

### SOUTER v. SAME.

[1 Woolw. 49.] [1]

Circuit Court, D. Wisconsin. April Term, 1864.

WHEN VALIDITY OF INCORPORATION CANNOT BE QUESTIONED — OF DISCHARGE OF RECEIVER IN CHANCERY—SECURITY—OTHER REMEDY — POSSESSION REVERTS — RIGHT FORFEITED —DECREE INVALIDATING JUDGMENT.

1. When a party has been impleaded in a bill as a corporation, and, in decrees made in the cause, has been recognized as such, the question cannot be afterwards raised therein, whether the proceedings had in order to its incorporation were regular or effectual.

2. A railroad ninety-five miles long, being a link in an important route, whose gross annual earnings are $800,000, in good condition, is ample security for mortgage debts thereon amounting to $2,200,000; and a receiver of such road, appointed at the suit of a party on whose debt $300,000 is offered to be paid, and who has a decree which provides for sale in case of default of payment, as therein provided, will be discharged.

3. A receiver of such road will be discharged, who was appointed on a creditor's bill, showing a judgment for $16,000, when the plaintiff enjoys all the ordinary remedies for enforcing his lien, and has received only $1000 for four years, during which the receiver has been in possession of the road.

4. A party having, as security for a large debt, a lease of such road, from whom the possession was taken by the receiver, is, upon his discharge, entitled to have possession restored to him.

5. But a party holding such lease, who has failed to pay sums which he therein stipulated to pay as consideration therefor, and who, by reason of his failure in that behalf, has lost possession, and permitted the property to remain out of his possession for four years, exposed to the hazards of sale, has lost his right of possession.

6. An unreversed decree, declaring that the judgment, to secure which such lease was made, was invalid, and setting it aside, will have a persuasive influence towards discharging a receiver appointed, or sought to be retained, for its benefit.

This was a motion made by the Milwaukie and Minnesota Railroad Company, for an order discharging a receiver, and transferring to it possession of a certain section of railroad, upon its paying, within a short day, the sums now due upon it. The railroad which is involved in this matter is ninety-five miles long, and extends from Milwaukie to Portage. It is a part of a railroad built by the La Crosse and Milwaukie Railroad Company. This corporation, having mortgaged the road here involved to Bronson and Souter, as trustees, to secure certain bonds with interest coupons, and default in the payment of the interest having been made, on the 9th of December, 1859, the mortgagees filed their bill of foreclosure in the United States circuit court for Wisconsin.

[1] [Reported by James M. Woolworth, Esq., and here reprinted by permission.]

The Milwaukie and Minnesota Railroad Company, Zebre Howard, Graham and Scott, and Selah Chamberlain were impleaded with the mortgagees. In 1858, Howard had recovered in the state court of Wisconsin a judgment against the mortgagees, which he sued over in the federal court, where, on the 28th of November, 1859, he had judgment for $16,-379.86. In 1860, he filed his creditor's bill on this judgment, in which suit a receiver was appointed, who, on the 11th of June in that year, took possession of the whole road. On the 6th of July following, the same receiver was extended to the foreclosure suit above mentioned. A decree having been rendered in that cause, appeals were prosecuted to the supreme court, whence it was remitted to the circuit court, with special directions set forth in the mandate: "To enter a decree for all the interest due and secured by the mortgage, with costs; that the court ascertain the amount of moneys in the hands of the receiver or receivers from the earnings of the road covered by the mortgage, which may be applicable to the discharge of the interest, and apply it to the same; and that if the moneys thus applied are not sufficient to discharge the interest due on the 1st day of March, 1864, then to ascertain the balance remaining due at that date, and in case such balance is not paid within one year from the date of the order of the court ascertaining it, then an order shall be entered directing a sale of the mortgaged premises, under the direction of the court; and on bringing the proceeds into court, they shall be applied to the payment of the balance of interest; and if they exceed such balance, shall be applied to the future accruing interest down to the sale; and if they exceed that, to the principal of the bonds, in case the bondholders assent, or pro rata to those who may assent; and any remaining balance of the proceeds to be invested, under the direction of the court, for the payment of future accruing interest, and ultimately the principal. And further, that in case the interest upon the bonds is paid without a sale, the decree shall remain as security for subsequent accruing interest, and ultimately for the principal. And further, that the court may pay out of moneys in the hands of the receiver, or out of the proceeds, the taxed costs of the trustees in the proceedings for the foreclosure of the mortgage, not taxed and received from the defendants in those proceedings; and also such counsel fees in behalf of the trustees, as the court, in its discretion, may deem right to allow." [Bronson v. La Crosse & M. R. Co., 2 Wall. (69 U. S.) 283.]

The La Crosse and Milwaukie Railroad Company made to one Barnes, as trustee, a mortgage, which was subsequent and in terms subject to the mortgage to Bronson and Souter. This mortgage was foreclosed and the road sold, and the Milwaukie and Minnesota Railroad Company became the purchaser. This company was organized under the laws of Wisconsin, with the view of making this purchase, and, in the bill first above mentioned, was impleaded in its corporate capacity, as the successor of the mortgagor, and as the holder of the equity of redemption. The Milwaukie and Minnesota Railroad Company suffered the bill of Bronson and Souter to be taken as confessed, but two of its stockholders interposed answers, so that the court, in its decree, recognized its corporate existence. And the supreme court gave heed to those answers, and decreed with a view to the matters alleged therein, and, of necessity, with a recognition of the company's corporate existence. This company now offered to pay all that the mandate required; that is, "all the interest due and secured by the mortgage," providing the receiver be discharged, and they be placed in possession of the road. The mortgage debts amounted to $2,200,000. The road was in good condition, and constituted a part of a direct line of railroad from Milwaukie to the Mississippi. Its gross earnings for the year preceding the application here, as shown by the receiver's reports, were $800,000. Under the mandate it was the duty of the court to enter a decree for the interest, and, after giving day of payment of the sum to be found due, to direct a sale in case of default therein. With such a decree entered, which would stand as security for the accruing interest, and the road being of such value, as is shown by the above recited facts, the moving party insisted, that, if they paid at once what was required by the decree to be paid within a year, they should be restored to the possession of their own property. This claim was resisted by the other parties to the suit, upon grounds which the court in its opinion pass upon, and which there fully appear.

Mr. Carpenter, for motion.
Mr. Cary, contra.

MILLER, Circuit Justice. The first suit above mentioned is a proceeding in chancery, instituted in the district court of the United States for this district while it possessed circuit court powers, to enforce a judgment lien on the road of the La Crosse and Milwaukie Railroad Company. It was commenced in 1860, and on the 11th day of June, in that year, a receiver was appointed, who took charge of the whole road and all its appurtenances. Prior to this, on the 9th day of December, 1859, the plaintiffs in the second suit, who were trustees of a mortgage to secure $1,000,000, covering the eastern end of the road from Milwaukie to Portage, had brought their suit in the same court to foreclose their mortgage; and on the 6th day of July, 1860, on their motion, the same person was appointed receiver of this part of the road, who had been previously appointed receiver of the whole road in the Howard suit. The amount of Howard's judgment is about $20,000, and is conceded to be subor-

dinate in its lien to the mortgage of Bronson and Souter.

The district court rendered a decree in favor of Bronson and Souter for half the amount of the debt secured by their mortgage, and ordered a sale and foreclosure. From this decree the trustees appealed to the supreme court. That court, at its recent term, reversed that decree, holding that the plaintiffs were entitled to the full amount of the bonds secured by the mortgage, with the accruing interest. [Bronson v. La Crosse & M. R. Co., supra.] The mandate of the supreme court, which is now before us here, directs us to ascertain the amount of interest due on these bonds on the 1st day of March last, after deducting such sums as may be in the hands of the receiver applicable to that purpose; and that, if that sum, with the accruing interest and costs, is not paid within twelve months from the date of the order ascertaining the amount, then the road is to be sold.

The Milwaukie and Minnesota Railroad Company now comes forward, and proposes to pay this sum within a short time to be fixed by the court, say twenty or thirty days, and asks an order directing that, upon such payment, the receiver be discharged, and that he deliver to said company the railroad from Milwaukie to Portage, with the rolling stock and other appurtenances properly belonging to it. A similar order is asked in the Howard suit.

The granting of this order is resisted by Souter, the surviving trustee, Howard, and Selah Chamberlain; and it is very obvious that, if the plaintiffs are paid all that is due them on their mortgage, the order appointing a receiver in the suit should be discharged, unless some very stringent reason exists for its continuance.

The first inquiry, in this view of the case, is concerning the claim of the Milwaukie and Minnesota Railroad Company. The La Crosse and Milwaukie Railroad Company, which built the road, and which gave the mortgage to Bronson and Souter, afterwards made a mortgage to William Barnes. This mortgage was foreclosed by a proceeding prescribed by the statutes of Wisconsin; and the purchasers at the sale organized themselves, under the laws of that state, into the corporation now setting up this claim. By virtue of that sale and foreclosure, this company became the successors in interest of the La Crosse and Milwaukie Railroad Company. In it rests, subject to the incumbrance, the legal title to the road, appurtenances, and franchises of which it asks possession.

An attempt is made, on this motion, to question the regularity of the proceedings by which this company was incorporated, and the fairness of its purchase.

The first objection is altogether inadmissible, because this corporation was made a defendant to the foreclosure suit by the plaintiffs, and has been recognized by them, and by this court, and by the supreme court of the United States, as an existing corporation. It is certainly too late, for any purpose of this suit, on a motion of this kind, to question its legal existence.

Nor can the second objection be entertained. The supreme court of the United States, in the case wherein we are now considering its mandate, has passed upon the very question. It has decided that the Milwaukie and Minnesota Railroad Company has become the owner of the road, and that, by virtue of the foreclosure proceedings under the Barnes mortgage, all liens subsequent in date to that incumbrance, including the claim of Howard, were cut off and for ever barred.

The language of the supreme court is this: "Now, it appears that each of these judgments was recovered after the date of the third mortgage of the La Crosse and Milwaukie Company, upon the foreclosure of which the Milwaukie and Minnesota Company was formed. The liens of these judgments were subsequent to this mortgage, and were cut off by its foreclosure. Indeed, the judgment of Howard, of November, 1858, and the last judgment of Graham and Scott, which was recovered in 1860, never were liens upon any interest in the road of the La Crosse and Milwaukie Company, the defendants in the judgments, as the equity of redemption had already passed to the purchaser, under the sale to Barnes in the foreclosure of the third mortgage, and afterwards became vested in the Milwaukie and Minnesota Company. These judgment creditors, therefore, according to their answers, have no interest in the subject matter of this litigation."

This opinion was rendered in a proceeding to which all who oppose the present motion, except the Milwaukie and St. Paul Railroad Company, were parties; and that company acquired any interest it may have in the property now under consideration, pendente lite. In the case of Russell v. Ely, 2 Black [67 U. S.] 575, the supreme court has decided that the mortgagee of real estate does not acquire the legal title to the mortgaged premises, nor the right of possession, except by the consent of the owner, and that the holder of the legal title may maintain ejectment against the mortgagee in possession. It cannot, then, be controverted in this proceeding, and so far as the parties to this suit are concerned, that the Milwaukie and Minnesota Railroad Company is the legal owner of the property of which it asks possession.

I next proceed to examine the objections raised by each of the parties I have mentioned to the discharge of the receiver, and to placing the road in the possession of that company.

The plaintiffs generally urge, as their first ground of objection, that the road itself and its appurtenances are not a sufficient secu-

rity for their debts; and that during the year which is given by the supreme court for the payment of the arrears of interest, they should be retained in the hands of the receiver, in order that the accruing revenue may be applied thereto. The property on which the plaintiffs' mortgage is a lien consists of a road-bed ninety-five miles in length, extending from Milwaukie to Portage, together with the depots, rolling stock, and other appurtenances connected therewith. It constitutes a part of a direct line of road from the former city to the Mississippi river, and is a link in one of the most valuable routes, both present and prospective, in the United States. The gross annual earnings from this ninety-five miles of road for the past year, as shown by the reports of the receiver, which are before us, are about $800,000. It is in good condition, and there is no reason to believe, that when it is transferred from the control of a receiver to that of the real owner, its value or its receipts will be diminished. There are two mortgages on which the interest is all paid, prior to that of these plaintiffs. Their aggregate amount, together with the plaintiffs' mortgage, is about $2,200,000. The road must be worth this sum, and is ample security for the plaintiffs' debt. If we consider the amount of the gross receipts just stated, the fact that the party now asking possession, in order to obtain it, proposes to pay some $300,000 or $400,000 of the plaintiffs' demand, and that the decree which we are to render must stand as security for his further claim, on which he can have an order of sale for any instalment of interest, if unpaid when it becomes due, it would seem to be the merest pretence that, after the payment of the sum awarded to him, his security requires the longer continuance of a receiver. With the accrued interest paid in full, with ample security for the remainder of his debt, and with speedy and sure means of enforcing its payment in case default be made therein, there can be no reason why he should longer retain the property from the control of its owner.

With regard to Howard, I have already shown that the supreme court has decided that he has no further interest in the property. It is said that its opinion was delivered under a mistake of fact. It may have been, and in a proper proceeding in his case it might be found that he has a valid subsisting lien; but, on this motion, I must consider the presumption to be the other way, and act accordingly. But suppose it be conceded that his lien is valid. It amounted, when his suit was brought, to less than $20,000. Shall this road, with annual receipts to the amount of $800,000, be retained in a receiver's hands, for this comparatively inconsiderable sum, when the creditor possesses all ordinary remedies for enforcing his claim? Is there no means of enforcing a lien or collecting a debt but through a re-

ceiver? Howard has now had his receiver for four years; and has received but $1000. and has taken no steps in his cause since the order affording him this extraordinary remedy. And during all this period he has been asserting a lien, the validity of which, at the best, is extremely doubtful. It surely cannot be necessary, under such circumstances, to argue against persevering in that mode of enforcing the judgment.

Mr. Chamberlain objects to the property's being turned over to the moving party here, and insists that possession should be restored to him. He asserts that he has a judgment for over $700,000, which is a lien upon the road; and that, when the receiver was appointed, he was in possession under a lease, which was executed to him as security for his debt. If these representations were true, and his lease unimpeached, or his debt conceded to be just, I should have no hesitation, upon discharging the receiver, in replacing the property where the court, when it made the appointment, found it. And as the matter is now presented to me, moreover, I am constrained to say that Mr. Chamberlain's objection to the discharge of the receiver is the only one which has deserved a moment's consideration. It is not true, however, that Mr. Chamberlain was in possession when the receiver was appointed. The terms of his lease required him, out of the proceeds of the road, to keep down the interest upon the mortgage debt of the plaintiff in this suit. This he failed to do, and, either voluntarily, or upon necessity, some fourteen or fifteen days before the first order appointing a receiver, he had surrendered possession of the property to the plaintiff. This fact is conceded by all parties, and is distinctly proved by Mr. Dow in the principal suit, and shown by the accounts returned into this court in that case. When the receiver was first appointed, therefore, the property was taken by the court from these plaintiffs, and not from Mr. Chamberlain. Again, it appears that through his failure to keep down the interest on the mortgages, and by parting with the possession, Mr. Chamberlain abandoned his claim under the lease, and can no longer insist on the right to hold possession of the property as his security. I must confess, that, upon examining the lease in the light of this conceded fact, it is by no means clear to me that, if Mr. Chamberlain were to bring his action to recover possession, he should be successful. The consideration, or the main consideration, has failed. At all events, after permitting the property, for four years, to be kept both from him and from its owners, and subjected to all the hazards of sale and loss, it would seem that his right to its possession must have terminated. Nor can I, in an application like this, addressed in some sense to the discretion of the court, shut my eyes to the fact that Mr. Chamberlain's judgment, which

was for the debt secured by the lease, stands upon a very doubtful basis as to its validity and justice. It is certainly true that, by a decree which is in full force, it has been set aside and vacated.

And although I do not propose here to determine whether that decree can be used by the La Crosse and Milwaukie Company, or by its successors, the Milwaukie and Minnesota Company, yet it certainly must have a persuasive influence in determining whether a receiver should be continued for the benefit of that judgment, or whether, if he is discharged, the possession should be remitted to Mr. Chamberlain.

When I add to these considerations, as in my opinion the fact is, that there is sufficient security for any lien Mr. Chamberlain may have on the road; that the courts are open for him to enforce it; and that, although a party to all the suits concerning this road, he has never thus far, either by original or cross bill, set up a claim to any relief; I do not think his objections are sufficient to induce us to continue the receiver, or to award to him the possession of the property upon the receiver's being discharged.

By reason of a disagreement between Mr. Justice Miller and Mr. District Judge Andrew J. Miller upon the subject matter of the motion, the application was, notwithstanding the above opinion, overruled.

[NOTE. The Milwaukee & Minnesota Railroad Company appealed from the order denying their petition for the dismissal of a receiver, but the appeal was dismissed by the supreme court in an opinion delivered by Mr. Justice Chase on the ground that the removal or appointment of a receiver rested in the sound discretion of the court, and was not reviewable. 131 U. S. Append. lxxxi.]